# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4853 | **DATE** | 9/24/2001 |
| **CASE TITLE** | U.S. ex. rel. ROOSEVELT WILDER vs. DWAYNE CLARK | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Wilder's Writ for Habeas Corpus is denied. Wilder's motion for an evidentiary hearing and appointment of counsel is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 5 2001 | 41 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES ex. rel., )
ROOSEVELT WILDER, )
  )
Petitioner, )
  )
v. ) No. 99 C 4853
  )
DWAYNE CLARK, ) Judge John W. Darrah
  )
Respondent. )

## MEMORANDUM OPINION AND ORDER

Petitioner, Roosevelt Wilder (Wilder), seeks a writ of habeas corpus against the Stateville Correctional Center Warden, Dwayne Clark, pursuant to 28 U.S.C. § 2254. Before the Court is Wilder's *pro se* Writ of Habeas Corpus in which he raises six grounds for relief: (1) ineffective assistance of trial counsel for failure of trial counsel to present a plausible defense, (2) denial of due process where the State failed to disclose material evidence, (3) error by the trial court in allowing the State to lead a witness, (4) petitioner did not knowingly and intelligently waive his right to a jury trial, (5) error by the trial court in not "making sure" that the jury waiver was made knowingly and intelligently, and (6) ineffective assistance of appellate counsel.[1] In addition, petitioner seeks an evidentiary hearing on the ineffective assistance of trial counsel claim and appointment of counsel.

Following a bench trial, Wilder was convicted of first-degree murder, attempted armed robbery, aggravated unlawful restraint, and unlawful use of a weapon by a felon. He was sentenced to a 60-year prison term for the first-degree murder conviction with a consecutive 10-year term for attempted armed robbery and concurrent five-year terms of imprisonment for aggravated unlawful

---

[1] Petitioner's seventh claim, ineffective assistance of post-conviction counsel, was previously dismissed pursuant to 28 U.S.C. § 2254(i).

restraint and unlawful use of a weapon by a felon.

Wilder appealed his sentence to the First District Appellate Court (Appellate Court), arguing that the trial court erred by refusing to consider mitigating evidence showing that he was under the influence of drugs and suffered from major depression at the time of the offense. On August 12, 1996, the Appellate Court affirmed Wilder's sentence in a summary order, finding in part, that the trial record showed that the trial court expressly considered the mitigating evidence but determined that such evidence was insufficient to reduce Wilder's sentence. *People v. Wilder*, No. 1-95-3355, Aug. 12, 1996 (Rule 23 Order). Wilder filed a petition for leave to appeal with the Illinois Supreme Court. On December 4, 1996, the petition was denied.

Subsequently, Wilder filed a Petition for Post-Conviction Relief, alleging: (1) his Fourteenth Amendment rights were violated because he did not knowingly and intelligently waive a jury trial; (2) he was denied a fair trial because the State was allowed to lead a witness; (3) he was denied a fair trial because the State failed to disclose material evidence; (4) he was denied a fair trial because the state misstated evidence during closing arguments; (5) ineffective assistance of trial counsel for failure to present a plausible defense; and (6) ineffective assistance of appellate counsel for not raising these issues on direct appeal. On July 27, 1998, the Appellate Court granted Wilder's appointed counsel's, the public defender of Cook County's, motion for leave to withdraw as appellate counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Wilder*, 1-97-2886, July 27, 1998 (Rule 23 Order). Wilder filed an application for leave to appeal with the Illinois Supreme Court. On December 24, 1998, the petition was denied.

In July 1999, Wilder filed the present petition. In November 1999, the respondent filed an answer to Wilder's petition, arguing that Wilder's claims were procedurally barred. On March 31,

2000, the Court entered an order rejecting respondent's argument that the claims were procedurally barred and ordered respondent to address the merits of the claims. Respondent's subsequent motion to reconsider was also denied.

Respondent filed an answer addressing the merits of Wilder's claims, and Wilder filed a *pro se* reply to the answer. Wilder also filed a *pro se* motion for an evidentiary hearing on the ineffective assistance of trial claim and for appointment of counsel.

In his ineffective assistance of trial counsel claim, Wilder alleges that his trial counsel was ineffective because she failed to determine if Wilder was fit to stand trial and/or assert the affirmative defense of intoxication. Wilder cites to three different psychological reports that his trial counsel received before trial that he believes call into question his ability to stand trial and/or provided information to trial counsel that a defense of intoxication should have been offered at trial.

The reports cited by Wilder indicate that he suffered from "major depression" and that it was "highly likely that he was at least to some extent under the influence of cocaine and heroin at the time of the offense." Doctor Lyle Rossiter (Rossiter) also concluded that while Wilder was "to some degree intoxicated and to a significant extent under the influence of major depression at the time of the offense", there was "nothing in the history to suggest that he was suffering from a mental disease or defect of such severity as to substantially impair his ability to appreciate the criminality of his acts or impair his capacity to conform his conduct to the requirements of law".

Wilder also cites to Dr. Albassian's testimony at trial in support of his claim. At trial, Dr. Albassian testified, in part, that metabolites of heroin and cocaine were found in Wilder's urine following the shooting, that Wilder made a serious suicide attempt after the shooting, and that Wilder suffered from major depression and abused alcohol, cocaine, and heroin.

3

Wilder also cites to affidavits from his mother and brother that aver Wilder's mental state changed prior to the commission of the crime. However, the affidavits were completed in March 1997, two years after the trial. Therefore, they do not support Wilder's argument that his trial counsel was ineffective because she did not have these affidavits prior to trial.

A review of the trial transcript indicates that Wilder's counsel did elicit testimony concerning Wilder's depression, suicide attempts, and drug abuse. In addition, the State's Attorney indicates that Wilder's counsel did answer in discovery that Wilder may raise the defense of intoxication. During closing arguments, Wilder's counsel argued that the evidence supported the conclusion that Wilder did not have the mental state to commit first-degree murder. Trial counsel stressed testimony that indicated Wilder suffered from a mental illness – major depression, he abused drugs, and that drugs were in his system at the time of the shooting.

In addition, at sentencing, the trial judge stated that "there were substantial grounds tending to excuse or justify the defendant's criminal conduct though failing to establish a defense. And I would say that was part of the theory of the defense's case that the drugs he was taking. The depression that he was feeling was set forth as a possible defense or if not a substantial ground tending to excuse or justify his criminal conduct. It doesn't."

A district court need not grant a hearing in a habeas petition if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 2000) (*Menzer*). However, a district court must grant an evidentiary hearing if the petitioner "alleges facts that, if proven, would entitle him to relief." *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994).

To show that his counsel was ineffective, Wilder must establish that: (1) his counsel's

4

representation fell below an objective standard of reasonableness; and (2) a reasonable probability existed that, but for his lawyer's alleged errors, the outcome of his case would have been different. *Strickland v. Washington*, 466 U.S. 668, 684 (1984) (*Strickland*); *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). Only those "who can prove under *Strickland* that they have been denied a fair trial by gross incompetence of their attorneys will be granted the writ." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) (*Kimmelman*). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. For prejudice, a defendant must show that counsel's unprofessional errors undermined the confidence in the outcome of the trial. *Strickland*, 466 U.S. at 494. Prejudice in *Strickland* refers to "unprofessional errors" so egregious "that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman*, 477 U.S. at 374.

In a claim of ineffective assistance of counsel for failure to request a fitness hearing, "[t]he question is not whether there should have been a fitness hearing, but whether [petitioner] was fit to stand trial–whether he was sufficiently able 'to consult with his lawyer with a reasonable degree of rational as well as factual understanding of the proceedings against him." *Eddmonds v. Peters III*, 93 F.3d 1307, 1317 (7th Cir. 1996) (citations omitted). A petitioner must present substantial facts supporting his claim that he was incompetent during pertinent times of the proceedings, substantial facts being "facts sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during trial." *Galowski v. Berge*, 78 F.3d 1176, 1181 (7th Cir. 1996).

Here, Wilder relies upon a diagnosis of major depression, his suicide attempts, and testimony by individuals that Wilder was depressed prior to the shooting. However, none of the reports or the

5

testimony of the doctors indicate that Wilder was unfit for trial that took place more than two years after the shooting. In addition, Dr. Rossiter's report, cited by the petitioner, found that there was nothing in Wilder's history indicating that he was suffering from a mental disease or defect and, specifically, that his mental state and behavior did not meet the criteria for an insanity defense. Wilder provides no facts concerning his mental state at the time of the trial. In addition, the trial transcript indicates that he responded appropriately with the trial judge during an interchange concerning waiving his right to trial by a jury. Accordingly, Wilder's claim that his trial counsel was ineffective for failing to request a fitness hearing fails.

Wilder also claims his trial counsel was ineffective because she failed to assert the affirmative defense of intoxication. However, the record before the Court indicates that trial counsel did assert the defense of intoxication both before trial in her discovery and during trial through testimony. In addition, trial counsel argued during closing argument that Wilder did not have the mental state to commit first-degree murder because of his mental state, including depression and his use of drugs, including the fact that traces of drugs were found in his urine after the shooting. Furthermore, the trial judge noted that trial counsel asserted a defense of intoxication and decreased mental sate; however, the trial court did not find that the evidence was sufficient to excuse or justify Wilder's conduct. In fact, defense counsel adroitly objected and caused the trial court judge to disregard certain potentially inculpatory testimony, as further discussed below. Based on these facts, Wilder has failed to establish that his trial counsel's performance fell below an objective standard or reasonable competence.

Furthermore, Wilder has failed to establish that he was prejudiced by trial counsel's actions. Trial counsel did place evidence before the trial judge that Wilder suffered from depression, abused

drugs, and had drugs in his system at the time of the shooting. The trial judge did not find the evidence sufficient to excuse or justify the shooting. Accordingly, Wilder's ineffective assistance of trial counsel for failure to offer an intoxication defense fails.

The above also illustrates that the motion, the files, and records of the case conclusively show that Wilder is not entitled to relief on the ineffective assistance of trial counsel claims. Accordingly, Wilder's motion for an evidentiary hearing and appointment of counsel is denied. *See* 28 U.S.C. § 2255; *Menzer*, 200 F.3d at 1006.

Wilder also claims that he was denied his due process rights because the state failed to disclose material evidence.

At trial, the State's Attorney questioned Diedra Thomas, Wilder's ex-girlfriend and "witness" to the shooting. The following exchange took place:

> Q. And where in the house did you go?
> A. In the living room.
> Q. What did you do, if anything, in the living room?
> A. He unplugged – Roosevelt unplugged the phone in the living room and I unplugged the phone in the kitchen.
> Q. Why were the phones unplugged?
> Ms. Herigodt [Wilder's attorney]: Objection, judge.
> The Court: Overruled.
> The Witness: Because he told me that if we leave my kids in the house and [] would tell if we took them with us, [] would tell, too. So I unplugged the phone, he unplugged the phone in the living room. I unplugged the phone in the kitchen.
> Ms. Herigodt: Judge, I am going to object. That statement was never tendered in discovery.
> The Court: Overruled. *I won't consider it.* (Emphasis added.)

It is a violation of due process for the state to suppress evidence favorable to the accused when that evidence "is material either to guilt or to punishment". *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (*Brady*). Suppression of impeachment evidence can also give rise to a *Brady* violation. *Giglio v. United States*, 405 U.S. 150, 154 (1972). To obtain a new trial under *Brady*, a defendant

7

must establish that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to an issue at trial. *United States v. Hartbarger*, 148 F.3d 777, 786 (7th Cir. 1998) (*Hartbarger*). Evidence is material only if there is a "reasonable probability" that its disclosure would have changed the result of the trial. *United States v. Silva*, 71 F.3d 667, 670 (7th Cir. 1995). In other words, evidence is material, if, in light of the "trial record as a whole", *United States v. William*, 81 F.3d 1434, 1438 (7th Cir. 1996), the evidence "undermines confidence in the outcome of the trial". *Hartbarger*, 148 F.3d at 786.

Wilder does not explain how the introduction of the above-cited testimony violated his rights. Nor does Wilder allege that the testimony, which the trial judge stated he would not consider, was favorable to his defense. In fact, the test, if allowed, could have been considered as rebutting any evidence of diminished capacity. In his post-conviction petition to the Illinois Supreme Court, Wilder argued that had the evidence been properly disclosed, his trial counsel could have investigated if evidence existed that supported or discredited Thomas's testimony to enable his trial counsel to impeach such testimony if it in fact was not true. However, Wilder presents no evidence that such testimony was false and could have been used as impeachment material. Accordingly, Wilder has failed to establish that the suppressed evidence was favorable to his defense, and his claim fails.

Wilder next argues that his due process rights were violated because the trial court erred and manifestly abused its discretion by allowing the State's Attorney to ask leading questions during Thomas's testimony. Wilder cites to the following testimony in support of his argument:

> Q: So when the defendant came into that bedroom, what happened next?
> A: He asked me for money.
> Q: What did you say to him?

A: I said, "I didn't have any."
Q: What did he then say?
A: "Let's go to the bank."
Q: Okay. What did you say about that suggestion?
A: The bank was closed.
Q: So what else happened?
A: I said I had $200 at my mother's.
A: Why did you tell him that?
A: Because I was scared and I wanted to get out of the house. I wanted to be out of the house.
Q: So, when you told him that you had $200 at your mother's, did he want you to get that money from your mother's?
A: Yes.
Q: Now when he was in that bedroom talking to you asking you for money and discussing how to get this money, did he have anything in his hands?
A: Yes.
Q: What was that?
A: A gun.
Q: When you say you had $200 at your mother's house what did he say?
A: He said, "Let's go get the money."

\* \* \*

Q: At your mother's house, did you ring the bell?
A: Yes.
Q: When you rang the bell, where was the defendant, Roosevelt Wilder?
A: Standing on the sidewalk.

\* \* \*

Q: When you went upstairs, did you do anything before you called the police?
A: I put a lot of stuff in front of my mother's door after I closed it and locked it.
Q: When you say you put a lot of stuff, what kind of stuff?
A: Floor model TV, a dresser, a night stand.
Q: Would this have been your mother's bedroom?
A: Yes.
Q: And is she now in that same room with you?
A: Yes.

Federal Rules of Evidence 611(c) allows the use of leading questions when "necessary to develop ... testimony." Fed. R. Evid. 611; *United States v. O'Brien*, 618 F.2d 1234, 1242 (7th Cir. 1980) (*O'Brien*). The allowance of leading questions is within the trial court's discretion, and the court's exercise of that discretion is not reversed absent an abuse of that discretion. *O'Brien*, 618

F.2d at 1242.

A review of the questions cited by Wilder demonstrates that some of the questions were leading. However, the trial court had broad authority to control the admission of evidence and the use of leading questions, and its ruling would not have been disturbed unless there was clear abuse of discretion resulting in manifest prejudice to Wilder. *People v. Terrell*, 185 Ill.2d 467 (1998); *United States v. Page*, 1999 WL 731709 (N.D.Ill. Aug. 30, 1999) (*Page*). A review of the questions establishes that there was no abuse of discretion in the trial court's allowance of the leading questions in issue, and no denial of due process occurred. *See Page*, 1999 WL 731709 at * 5 (denying habeas petition claim that was based on leading questions that were asked that were outside the scope of cross examination). Accordingly, this claim fails.

Wilder also argues that his constitutional rights were violated because he did not knowingly and intelligently waive his right to a jury trial. In a related claim, he alleges that his due process rights were violated because the trial court did not "make sure" that he knowingly and intelligently waived his right to a jury trial.

The trial record reflects that the trial judge spoke with Wilder about waiving his right to a jury trial before the trial began.

> The Court: Mr. Wilder has signed a jury waiver; is that correct?
> Ms. Herigodt: No, judge, I don't think he has, but we will do so now.
> The Court: Mr. Wilder, your attorney has handed you a form. That form says you have a right to jury trial. That's where twelve people determine whether you are guilty or not; you understand what a jury trial is?
> The Defendant: Yes.
> The Court: Are you giving up your right to a jury trial?
> The Defendant: Yes, sir.
> The Court: Are you asking me to determine whether you are guilty or innocent?
> The Defendant: Yes, sir.
> The Court: You wish me to decide your guilt or innocence, sign those forms. They will be

10

made part of the court file to accept this decision.

In order for a defendant to waive his right to a jury trial, he must do so in a knowingly and intelligent manner, demonstrating that he is sufficiently aware of the relevant circumstances and consequences of his waiver. *Brady*, 397 U.S. at 748. The burden is on the defendant to demonstrate that his waiver of the right to a jury trial was *prima facie* invalid. *Milone v. Camp*, 22 F.3d 693, 704 (7th Cir. 1994) (*Milone*).

In the instant case, the trial record demonstrates that the trial judge questioned Wilder about waiving his right to a jury trial before Wilder did so. The questions and comments by the trial judge included whether he wanted a jury trial, what a jury trial would consist of, if he was giving up his right to jury trial, if he understood what a jury trial was, and if he was asking the trial judge to make the decision of guilt or innocence. Wilder presents no evidence that his waiver was not voluntary and intelligently made. Furthermore, the exchange between the trial judge and Wilder indicates that the trial judge did sufficiently question Wilder to determine if his decision was made voluntarily and intelligently. *See Milone*, 22 F.3d at 704; *Estrada v. United States*, 457 F.2d 255, 256-57 (1972). Accordingly, Wilder's claims fail.

Lastly, Wilder claims that he was denied effective assistance of appellate counsel because appellate counsel failed to raise the above issues.

Claims of ineffective assistance of appellate counsel are reviewed under the *Strickland* standard. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000) (*Howard*). Performance of appellate counsel is deemed insufficient when counsel omits obvious and significant issues without a legitimate strategic reason for doing so, and prejudice is shown when the omitted issue may have

resulted in an order for a new trial or a reversal of the conviction. *Howard*, 225 F.3d at 790.

Because Wilder would not have been entitled to relief on the above issues, as found above, Wilder could not have been prejudiced by counsel's failure to raise these issues on appeal. Accordingly, Wilder's claim of ineffective assistance of appellate counsel fails.

For the reasons stated above, Wilder's Writ for Habeas Corpus is denied. Wilder's Motion for an Evidentiary Hearing and Appointment of Counsel is denied.

Dated: Sept 24, 2001

JOHN W. DARRAH
United States District Judge